UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                           :
RAVI KALIA,                            :
                                             :
                     Plaintiff,     :
                                             :               22-CV-7508 (VSB)
               - against -              :
                                           :             **OPINION & ORDER**
CITY COLLEGE OF NEW YORK, *et al.*,     :
                                           :
                   Defendants.  :
                                           :
--------------------------------------------------------X

Appearances:

Ethan York Leonard
The Law Offices of Neal Brickman
New York, NY
*Counsel for Plaintiff*

Jonathan Adam Siegel
Office of the New York State Attorney General
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Ravi Kalia is a history professor at the City College of New York ("CCNY"),

within the City University of New York ("CUNY") system. Kalia, an American of Indian

descent, alleges that he has experienced race discrimination and retaliation during the entirety of

his over thirty-year tenure at CCNY. In this action—his fourth lawsuit against CUNY—he raises

race discrimination, hostile work environment, and retaliation claims under Title VII and its New

York law analogues against CCNY, CUNY, and three employees of these institutions. Before me

is Defendants' motion to dismiss Kalia's complaint for failure to state a claim. For the following

reasons, the motion is GRANTED.

## I.    **Factual Background**[1]

Plaintiff Ravia Kalia is a tenured full professor of History at CCNY.  (Compl. ¶ 6.)[2]  He describes himself as "an individual citizen of the United States of America of Indian descent" and "not Caucasian."  (*Id*.)  Kalia alleges he "has been routinely and repeatedly discriminated against throughout the course of his tenure at CCNY from 1993 through the present."  (*Id*. ¶ 12.)

Defendant CCNY is an entity within Defendant CUNY, a university system operated by the State of New York.  (Compl. ¶ 7.)  Three individual employees of these institutions are named as Defendants to this action: Vincent Boudreau, President of CCNY; Paul Occhiogrosso, counsel to the CCNY President; and Erec Koch, the CUNY Dean of Humanities.  (Compl. ¶¶ 8–10.)

The events described in Kalia's Complaint involve issues related to, among other things, Kalia's longstanding desire and efforts to become a "Distinguished Professor" at CCNY, a designation that comes with a pay increase of $28,594 per year, as well as positive effects on "marketability, standing[,] and reputation."  (*Id*. ¶ 14.)  Prior to this lawsuit, Kalia had twice failed to attain the Distinguished Professor designation.  First, in approximately 2008 or 2009, a "division-wide Promotion and Benefits Committee," ("P&B"), voted not to approve Kalia's application.  (*Id*. ¶¶ 60-61.)  Second, in 2015, a "Special Committee" formed to assess the Distinguished Professor applications of Kalia and another professor; however, the Special Committee decided not to approve Kalia's application.  (*Id*. ¶ 84.)  After Boudreau became

---

[1] The facts contained in this section are based upon the factual allegations set forth in the Complaint filed by plaintiff Ravia Kalia ("Plaintiff" or "Kalia"), and documents incorporated within or integral to the Complaint, (Docs. 1, 1-1–1-11).  I assume the allegations in the Complaint to be true in considering the motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Compl." refers to Plaintiff's Complaint filed on September 1, 2022.  (Doc. 1, "Compl.")

Interim CCNY President, he told Kalia in April 2017 that Kalia "had not lost any ground" and that he would direct Koch and other administrators to assist in obtaining updated external reference letters. (*Id*. ¶ 85, 88.) In October 2017, however, Boudreau told Michele Baptiste, the Dean of Diversity, Compliance and Faculty Relations at CCNY, "that since Kalia's case for DP had twice not been cleared to be referred to him for action, he, Boudreau, was unable to act on it." (*Id*. ¶ 92.)

Kalia applied for the Distinguished Professor designation again in 2018. (Compl. ¶ 94; Doc. 1-11.) In May 2019, Kalia met with Koch to discuss his frustration at "the lack of progress" in the school's consideration of his candidacy. (Compl. ¶ 95.) In an email to Koch memorializing the meeting, Kalia wrote that Occhiogrosso and another professor "created a void of secrecy that was then filled with lies and misrepresentations of [Kalia] to stain [his] name," and complained that other professors had attained Distinguished Professorships even though they had not produced any scholarship and had violated school bylaws. (Doc. 1-2 at 3–4.) Koch responded that he could not comment on Kalia's allegations, but that Kalia's candidacy was "in the very capable hands of" History Department Chair Anne Kornhauser and the department's executive committee. (*Id*. at 2.) In June 2019, Kornhauser asked Kalia to suggest individuals who could review his candidacy materials. (Doc. 1-3 at 2.) She also advised him that he could not submit "older letters" of reference in support of his candidacy. (*Id*.) Later that month, Kornhauser wrote Kalia to request physical copies of some of his scholarship and asked how to access electronic copies of other scholarship. (*Id*. at 3.)

In October 2019, Kalia and Rishi Raj, another professor, received a racist and profane email from an individual outside the school. (Doc. 1-5 at 3; *see* Compl. ¶ 97.) Raj reported the email to President Boudreau and another school administrator. (Doc. 1-5 at 3.) Boudreaeu's

response, addressed to Raj with a copy to Kalia, apologized for the "hateful note," and suggested

to the other administrator that CCNY should ban the sender from the school. (*Id*.) Kalia,

responding after the administrator replied that he had spoken with Raj, wrote, "I am glad the

College will take steps to protect Rishi. Can I rely on the College to take similar steps for me

and my students as well?" (*Id*. at 2.) Kalia characterizes CCNY's response to the racist email as

"facially sympathetic to Professor Raj," and alleges that Kalia "was not even given those

courtesies [*sic*]." (Compl. ¶ 97.)

Kalia alleges that "[o]ver the following months," Kornhauser collected some reference

letters to support Kalia's Distinguished Professor application, but told other "potential referees

not to bother sending in their recommendations." (Compl. ¶ 98.) On March 17, 2020, Kalia and

Kornhauser discussed his candidacy on the phone. (*See* Compl. ¶ 102; Doc. 1-8.) Kalia

memorialized the call in an email, raising objections to Kornhauser's handling of his candidacy.

(*Id*.) For instance, Kornhauser told Kalia that some of his references had not sent in materials

necessary to the candidacy review, but two of Kalia's references told him that Kornhauser failed

to request they send their reference materials. (Doc. 1-8 at 3.)

Between May and September 2020, Kalia exchanged emails with Koch regarding the

status of his candidacy. (*See* Doc. 1-9; Compl. ¶¶ 103–12.) In the emails, Kalia asserted that

white professors under consideration for Distinguished Professorships had not had to meet the

same procedural requirements that he had to meet, and invoked the school's statements against

institutional racism issued in response to the George Floyd protests. (Doc. 1-9 at 4–10.) Koch

responded that he could not comment on Kalia's broader allegations, but assured Kalia that the

school would act on his Distinguished Professor application during the Fall 2020 semester. (*Id*.

at 2–5.)  Koch also directed Kalia to file any complaints of racism or retaliation among faculty members to the school's diversity office.  (*Id*. at 2.)

On December 1, 2020, Kornhauser asked Kalia to send her "information as to any projects that he was currently working on."  (Compl. ¶ 118.)  Kalia sent her a list of his projects. (*Id*.)  On December 10, 2020, the P&B Committee denied Kalia's application for a Distinguished Professorship.  (*Id*. ¶¶ 42, 119.)  The P&B Committee denied Kalia's application "under [Koch's] improper influence," and "because of his race and in retaliation for his ongoing complaints of discrimination and attempts to address the systemic racism and discrimination at CCNY."  (*Id*. ¶¶ 119–20.)

Following the denial of his Distinguished Professorship application, Kalia alleges that members of the faculty committed two other discriminatory or retaliatory acts.  First, on January 18, 2021, Kalia asked Kornhauser if he could take a sabbatical.  (Compl. ¶ 123.)  Kornhauser did not respond to the request until March 5, 2021, when she informed Kalia that he could not take a sabbatical because the January 31 deadline to request one had passed.  (*Id*. ¶¶ 124–25.)  Kalia alleges that a white professor was not subject to this deadline.  (*Id*.)  Second, in February 2021, Kalia requested to teach a historiography course.  (*Id*. ¶ 126.)  The school ignored his request, instead allowing an allegedly less qualified white professor to teach the course.  (*Id*. ¶ 127.)

## II.    **Procedural History**

Kalia filed a complaint with the EEOC, and on June 9, 2022 received a right-to-sue letter. (Doc. 1-1.)  On September 1, 2022, Plaintiff initiated this action, asserting claims for disparate treatment, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1) and § 2000e-3.  (Compl. ¶¶ 131–54, 165–70.)  The Complaint asserts parallel claims under the New York State Human Rights Law ("NYSHRL") and the New

York City Human Rights Law ("NYCHRL"), and pleads common-law tortious-interference

claims.  (*Id.* ¶¶ 155–64, 171–95.)

On January 23, 2023, Defendants filed a motion to dismiss Plaintiff's Complaint under

Federal Rule of Civil Procedure 12(b)(6), (Doc. 23), along with a supporting declaration, (Doc.

24), and a memorandum of law, (Doc. 25 ("Mem.").).  On February 15, 2023, Plaintiff filed his

opposition to the motion.  (Doc. 28 ("Opp'n").).  On March 10, 2023, Defendants replied, (Doc.

30 ("Reply")), and submitted another declaration in support of the motion to dismiss, (Doc. 29).

### III.  <u>Legal Standard</u>

 "A motion to dismiss is designed to test the legal sufficiency of the complaint."  *De

Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."

*Id.*  "Plausibility . . . depends on a host of considerations:  the full factual picture presented by

the complaint, the particular cause of action and its elements, and the existence of alternative

explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc.

v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (citation omitted).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts

alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Kassner*, 496

F.3d at 237.  A complaint need not make "detailed factual allegations," but it must contain more

than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of

action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Although all allegations

contained in the complaint are assumed to be true, this tenet is "inapplicable to legal

conclusions." *Id.*  A complaint is "deemed to include any written instrument attached to it as an

exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time

Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel.

& Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

## IV.    Discussion

I first address three procedural considerations, and then evaluate each of the Complaint's

causes of action.  I conclude that Kalia's federal causes of action fail, and I decline to exercise

supplemental jurisdiction over the remaining state-law claims.  As Kalia does not seek leave to

replead, I DISMISS the action with instructions for the Clerk of Court to close the case.[3]

### A.    *Defendants' Materials in Support of the Motion to Dismiss*

In moving to dismiss the Complaint, Defendants submit pleadings and exhibits from

Plaintiff's prior lawsuits, (Docs. 24-1–24-8), as well as six documents relating to allegations

within Plaintiff's Complaint, (Docs. 24-9–24-14).  Plaintiff correctly points out that the instant

motion "is a motion to dismiss, not a motion for summary judgment."  (Opp'n at 13.)  The

function of a motion to dismiss is to test whether the allegations in a complaint "state a legal

cause of action," not to test "the truth of the complaint's allegations." *S.E.C. v. Stoker*, 865 F.

Supp. 2d 457, 458–59 (S.D.N.Y. 2012).  Thus, the scope of my review of a motion to dismiss

---

[3] I decline to "*sua sponte* grant leave to amend," as Kalia "neither seeks leave to amend nor suggests that he
possesses additional facts that could cure the defects in his dismissed claims." *Kalia v. City U. of New York*, No. 19-
CV-6242, 2020 WL 6875173, at *8 (S.D.N.Y. Nov. 23, 2020) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.
2000); *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188, 2019 WL 3034866, at *7 (S.D.N.Y.
July 11, 2019)).

includes the Plaintiff's "pleading," *see* Fed. R. Civ. P. 7, documents of which I may take judicial notice,[4] and any written document that is (1) "attached to [the complaint] as an exhibit," (2) "incorporated in it by reference," or (3) "integral to the complaint." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59–60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 152).

Of the documents Defendants submit, I may consider only the pleadings in Plaintiff's prior lawsuits. (Docs. 24-1–24-5.) *See Gertskis v. E.E.O.C.*, No. 11-CV-5830, 2013 WL 1148924, at *1 (S.D.N.Y. Mar. 20, 2013) (first citing *Anderson v. Rochester–Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n. 4 (2d Cir. 2003); and then citing *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 157 (1969)) ("A district court reviewing a motion to dismiss may [] consider documents of which it may take judicial notice, including pleadings and prior decisions in related lawsuits.").

I may not consider the exhibits submitted in the prior lawsuits, (Docs. 24-6–24-8), as doing so "would permit the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding—one featuring a bespoke factual record, tailor-made to suit the needs of defendants." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016); *see also id.* (citing *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)) ("A complaint that alleges facts related to or gathered during a separate litigation does not open the door to consideration, on a motion to dismiss, of any and all documents filed in connection with that litigation.").

In evaluating the motion to dismiss, I also may not consider the CUNY publicity materials announcing the appointment of other Distinguished Professors, CUNY's guidelines

---

[4] The scope of judicial notice in this context is to "determine[e] what the documents state[,] not to prove the truth of their contents." *Cotiviti, Inc. v. McDonald*, No. 19-CV-6559, 2021 WL 2784529, at *6 (S.D.N.Y. July 2, 2021) (quoting *Casio v. Vineyard Vines, LLC*, No. 19-CV-5135, 2021 WL 466039, at *5 (E.D.N.Y. Feb. 9, 2021)).

governing the selection and review of Distinguished professors, Kalia's email requesting a sabbatical, and Kalia's later sabbatical application.  (Docs. 24-9–24-14.)  Defendants argue I may take judicial notice of the publicity materials because they are available on the CUNY website.  (Mem. at 18 n.21.)  When a court takes judicial notice of a website at the motion-to-dismiss stage, it may only use the information on the website to "determine[e] what the documents state[,] not to prove the truth of their contents."  *Cotiviti, Inc. v. McDonald*, No. 19-CV-6559, 2021 WL 2784529, at *6 (S.D.N.Y. July 2, 2021) (quoting *Casio v. Vineyard Vines, LLC*, No. 19-CV-5135, 2021 WL 466039, at *5 (E.D.N.Y. Feb. 9, 2021)).  Defendants wish to use the publicity materials for their truth, specifically to show that the white professors that Kalia alleges received Distinguished Professor promotions were appointed to their positions many years before Kalia's candidacy.  (Mem. at 18.)  I may not use these documents for this purpose in considering the motion to dismiss.  *See Goel*, 820 F.3d at 559 ("[A] Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence.").

Defendants next argue that the CUNY Distinguished Professor selection guidelines are integral to the complaint.  (Mem. at 4 n.8.)  However, a document is "integral" to the complaint only if the complaint "rel[ies] heavily upon the document's terms and effect."  *DeLuca*, F. Supp. 2d at 60 (internal quotation marks and alterations omitted).  "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotations' from the document is not enough."  *Goel*, 820 F.3d at 559 (quoting *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006)).  The CUNY guidelines do not "contain[] obligations upon which [Kalia]'s complaint stands or falls," *id.*, and I may not consider them in resolving the instant motion.

Finally, Defendants argue that the materials related to Kalia's sabbatical are incorporated within the complaint by reference.  (Mem. at 19 n.23.)  "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents."  *DeLuca*, F. Supp. 2d at 60 (internal quotation marks omitted).  "'Limited quotation' of documents not attached to the complaint 'does not constitute incorporation by reference.'"  *Id*. (quoting *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985)).  The sabbatical materials are not quoted in the complaint and do not otherwise meet this standard, and I may not consider them either.

## B.    *Preclusion*

Defendants argue that because Kalia raised similar discrimination claims in a prior action, *Kalia v. City Univ. of N.Y.*, No. 19-CV-6242, 2020 WL 6875173 (S.D.N.Y. Nov. 23, 2020), this lawsuit is barred by the doctrines of claim preclusion (which Defendants refer to as "*res judicata*") and issue preclusion (which Defendants refer to as "collateral estoppel").  (Mem. at 9–16.)  Because Judge Jesse Furman analyzed only Kalia's federal claims in the prior action, *Kalia*, 2020 WL 6875173, at \*8, I limit my analysis here to Kalia's federal claims, concluding that only Kalia's Title VII hostile work environment claim, or his "Second Cause of Action," (Compl. ¶¶ 139–54), is precluded.

Claim preclusion "bars re-litigation if '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" *Soules v. Conn. Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).  Issue preclusion, on the other hand, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context

of a different claim." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).

Kalia's Title VII disparate treatment claim, his "First Cause of Action," (Compl. ¶¶ 131– 38), is not precluded.  The actions that Kalia complains of—the denial of his application for a Distinguished Professor appointment, the denial of his sabbatical request, and the denial of his request to teach the historiography course—all occurred after November 23, 2020, the date that the prior lawsuit concluded.  *See Kalia*, 2020 WL 6875173, at *1–2, *8 (dismissing lawsuit based on events occurring between 2015 and 2018).  (*See also* Opp'n at 14, 14 n.12.)  To the extent that Plaintiff's Complaint discusses events prior to 2020 with respect to this claim, he explains that he included these allegations "by way of background and context only."  (Opp'n at 10 (quoting Compl. at 7).)  The decision to include these allegations may have been gratuitous, but it does not preclude the litigation of events that could not have been raised in it because they occurred following Kalia's most recent lawsuit.  *See Soules*, 882 F.3d at 55 (explaining that claim preclusion bars relitigation of claims that "could have been raised" previously (internal quotation marks omitted)); *Marcel*, 779 F.3d at 108 (explaining that issue preclusion applies when the issue was "actually litigated and resolved" in a prior lawsuit (internal quotation marks omitted)).

Kalia's Second Cause of Action, a Title VII hostile work environment claim, however, is precluded by his previous action.  In the prior lawsuit, Kalia alleged:

> that he was 'stripped of his duties'; precluded from teaching graduate courses and sitting on committees; given 'an office virtually on top of one of his antagonists'; and 'subjected to routine denigration and spiteful looks.'  Kalia also claim[ed] that the denial of his salary supplement, the delay in processing his distinguished professorship bid, and other instances of 'harassment and treatment faced by other minorities' contributed to a hostile work environment.

*Kalia*, 2020 WL 6875173, at *7 (record citations omitted).  Judge Furman dismissed Kalia's hostile work environment claim because the complaint had "not plausibly allege[d] that any of

this treatment was due to [Kalia's] race or national origin." *Id*.  Kalia repeats—in some cases word-for-word—many of the allegations in the instant complaint.  (*See* Compl. ¶¶ 145–50.)  The allegations that Kalia adds to the claim in this Complaint simply recite his disagreement with the results of a December 2021 faculty meeting.  (*Id*. ¶¶ 151–54.)  Kalia does not attempt to connect these allegations to a hostile work environment claim that is separate from the one that Judge Furman previously dismissed.  Since the prior action was adjudicated on the merits, involved the same parties, and asserts the same hostile work environment claim that Kalia raises now, the motion to dismiss Kalia's instant hostile work environment claim is GRANTED.  *See Soules*, 882 F.3d at 55.

With respect to Kalia's Title VII retaliation claim, his "Fourth Cause of Action," (Compl. ¶¶ 165–70), in the instant case Kalia complains of three actions:  the denial of his Distinguished Professor application, "the denial of the opportunity to teach graduate courses," and the denial of a salary supplement.  (Compl. ¶ 168.)  Judge Furman dismissed the retaliation claim based allegations that Kalia "was denied the salary supplement and other opportunities, such as teaching graduate courses," *Kalia*, 2020 WL 6875173, at *6, so Kalia is precluded from raising these portions of his claim again, *see Soules*, 882 F.3d at 55.  Thus, Kalia's references to "the denial of the opportunity to teach graduate courses, and the denial of his agreed upon and ultimately earned salary supplement," (Compl. ¶ 168), are precluded.  Kalia's retaliation claim is limited to the December 2020 denial of his Distinguished Professor application, which occurred after the end of the matter before Judge Furman.

## C.    *Timeliness*

Defendants next challenge the timeliness of Kalia's claims.  For present purposes, I limit my analysis to the surviving federal claims, and conclude that these claims are timely.  "In New

York, a plaintiff claiming employment discrimination under Title VII must file a charge with the EEOC no more than 300 days, *see Kalia*, 2020 WL 6875173, at *3 (first citing 42 U.S.C. § 2000e-5(e)(1); and then citing *Harris v. City of New York*, 186 F.3d 243, 247 n.2 (2d Cir. 1999)), "'from the date that the employee receives notice of the discriminatory decision,'" *id.* (quoting *Walker v. Linklaters LLP*, 948 F. Supp. 2d 396, 399 (S.D.N.Y. 2013)). It is undisputed that Kalia filed his EEOC charge on October 6, 2021, meaning that he must allege that the discriminatory actions occurred after December 10, 2020. (*See* Mem. at 16; Opp'n at 9–10.) Plaintiff received notice that his Distinguished Professor application was denied on December 11, 2020, (Compl. ¶ 119), his sabbatical request was denied on either January 31 or March 5, 2021, (*id.* ¶¶ 124–25), and his request to teach a historiography course was denied in February 2021, (*id.* ¶ 126). Thus, the disparate treatment claim and the surviving portion of the retaliation claim are timely.

### D.    *Disparate Treatment*

I next turn to the merits of Kalia's First Cause of Action, a Title VII disparate treatment claim. (Compl. ¶¶ 131–38.) Title VII prohibits an employer from intentionally treating someone worse because of, among other things, their race, color, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1); *Bostock v. Clayton County*, 590 U.S. 644, 658 (2020). To survive a motion to dismiss a Title VII discrimination claim under a disparate treatment theory, Kalia must plausibly allege: "(1) that [he] is a member of a protected class, (2) that [he] was qualified for the position [he] sought, (3) that [he] suffered an adverse employment action, and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). "In determining whether a Plaintiff has met the plausibility requirement, 'the court is to draw on its judicial experience and common sense.'"

*Miller-Sethi v. City Univ. of N.Y.*, No. 21-CV-8591, 2023 WL 419277, at *4 (S.D.N.Y. Jan. 26, 2023) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)).

I proceed to address each allegedly adverse action separately, but do not address the qualification or "protected class" prongs of the analysis, *Littlejohn*, 795 F.3d at 311, as Defendants do not dispute them, (*see* Mem. at 16–20.)

### 1. Distinguished Professorship

The first adverse employment action that Plaintiff alleges he suffered was the denial of the Distinguished Professor appointment. Defendants argue this action cannot support a disparate treatment claim because Kalia's Complaint does not plausibly allege Defendants denied the appointment based on a discriminatory rationale. (Mem. at 16–19.) I agree.

To state a disparate treatment claim, a plaintiff must allege "facts suggesting an inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. At the motion to dismiss stage for failure to state a claim, the facts in the complaint need only "give plausible support to a minimal inference" that "the employer was motivated by discriminatory intent." *Id*. at 310–11 (citing *Iqbal*, 556 U.S. at 678). One way to show discriminatory intent is to allege "the more favorable treatment of employees not in the protected group." *Id*. at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Kalia relies on this theory, as he alleges that white professors who were less qualified and had violated CUNY ethics rules and policies received Distinguished Professor promotions while he did not, and that the white professors did not face the same delays in their Distinguished Professor candidacies as he did. (Opp'n at 16; *see* Compl ¶ 120 ("[Kalia's] candidacy was much stronger than prior Caucasian candidates."); *id*. ¶¶ 65–67, 84 (discussing candidacies of two white professors, Eric Weitz and Beth Baron).)

When a discrimination claim rests on a theory that the plaintiff was treated less favorably than non-protected employees, the plaintiff must show that he was "similarly situated in all material respects" to the non-protected employees allegedly given preferential treatment. *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). The allegations must show that "the plaintiffs and comparator's circumstances bear a reasonably close resemblance," such that they are "similar enough to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *Conahan v. MedQuest Ltd.*, No. 20-CV-1325, 2022 WL 16748585, at *9 (S.D.N.Y. Nov. 7, 2022) (internal quotation marks omitted). However, "[e]mployees are not 'similarly situated' merely because their conduct might be analogized." *Mazzella v. RCA Glob. Commc'ns, Inc.*, 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986), *aff'd*, 814 F.2d 653 (2d Cir. 1987). Instead, the similarities must be such that there are not be "differentiating or mitigating circumstances" that would explain differential treatment. *Id.*

Plaintiff's Complaint does not suggest that his Distinguished Professor candidacy bore "a reasonably close resemblance" to the white professors he identifies as comparators. *Conahan*, 2022 WL 16748585, at *9 (internal quotation marks omitted). Kalia identifies three individuals as non-protected comparators: Weitz, "Stein,"[5] and Baron. (Compl. ¶ 120; Opp'n at 14.) Kalia's conclusory allegation that his application "was much stronger" than the comparators' applications is insufficient to raise an inference of discrimination. *Cf. Daniels v. City of N.Y.*, No. 17-CV-9960, 2019 WL 251511, at *4 (S.D.N.Y. Jan. 17, 2019) (dismissing discrimination claim where the plaintiff's complaint "provide[d] no details" as to comparators' "positions, responsibilities, qualifications or quality of their work"). Plaintiff provides no additional details

---

[5] Kalia does not provide a first name for "Stein" in the complaint. (*See* Compl. ¶¶ 110, 120, 137.)

as to Stein, so this professor fails as a comparator.  As to Weitz, the Complaint includes the additional detail that Weitz was the Dean of Humanities when CUNY promoted him to Distinguished Professor.  (Compl. ¶ 66.)  Kalia stresses that Weitz's dual administrator-Distinguished Professor appointment violated a compensation provision of CUNY's collective-bargaining agreement.  (*Id*.)  Because Weitz was an administrator, however, he had different "responsibilities" than Kalia, and thus is not a valid comparator in this context.  *Daniels*, 2019 WL 251511, at *4.  As to Baron, Kalia merely alleges that her application was evaluated for completeness in 2015 along with his, and that Baron eventually received a Distinguished Professor appointment.  (*See* Compl. ¶¶ 84, 120.)  However, aside from the conclusory allegation that he was more qualified than Baron, Kalia does not explain why he and Baron are similarly situated such that the decision to promote her but not him plausibly raises a minimal inference of discrimination.  In short, the Complaint does not contain any factual allegations to suggest that Kalia did not receive the Distinguished Professor appointment because of his race, color, or national origin.

### 2.  Sabbatical

Plaintiff's claim that he was not allowed to take a sabbatical fails for the same reason as his promotion claim.  Kalia, invoking the similarly-situated-comparator theory, alleges that a white professor named Craig Daigle "was recently allowed to take a sabbatical out of cycle." (Compl. ¶ 125.)  The Complaint, however, fails to include any facts suggesting that Kalia and Daigle were in materially similar positions such that their allegedly differential treatment would plausibly raise a minimal inference of race discrimination.  *See Conahan*, 2022 WL 16748585, at *9.  The denial of Kalia's sabbatical therefore does not support a disparate treatment claim.

### 3.  Historiography Course

The final allegedly adverse action that Kalia identifies is that he was denied the opportunity to teach a historiography course.  (Compl. ¶ 126.)  Defendant argues that a university's decision not to allow a professor to teach a course is not an "adverse employment action" that can support a discrimination claim under Title VII.  (Mem. at 20.)  It is true that some cases within this Circuit might be read to support that proposition.  *See, e.g.*, *Falcon v. City Univ. of New York*, 263 F. Supp. 3d 416, 428 (E.D.N.Y. 2017) (concluding that the denial of a specific work assignment was not actionable because "not everything that makes an employee unhappy is an actionable adverse action" (internal quotation marks omitted)).  During the pendency of the instant motion, however, the Supreme Court decided *Muldrow v. City of St. Louis*, holding that for an employer's action to be actionably adverse, the action need only cause "some harm respecting an identifiable term or condition of employment."  601 U.S. 346, 354–55 (2024).  The Court purported to "lower[] the bar Title VII plaintiffs must meet" for an employment-related harm to be actionable under the statute, rejecting any standard requiring a "'significant,' 'material,' or 'serious' injury."  *Id*. at 356 n.2.  Although *Muldrow* related to an allegedly discriminatory job transfer, Judge Jennifer L. Rochon recently concluded—consistent with decisions of the Third, Sixth, and Eighth Circuits—that it "applies to Title VII discrimination cases not involving transfers."  *Mitchell v. Planned Parenthood of Greater New York, Inc.*, --- F. Supp. 3d ---, 2024 WL 3849192, at *9 (S.D.N.Y. Aug. 16, 2024) (collecting cases).  Because a professor's courseload is a component of the "terms or conditions" of his or her employment, *Muldrow*, 601 U.S. at 355, denying a request to teach a course may constitute an adverse employment action under Title VII.

For Plaintiff's claim to succeed, however, he must sufficiently allege discriminatory motive. Here again, the allegations in the Complaint fall short. Kalia again alleges only that a white professor "with less experience and fewer qualifications who had not complained of discrimination" was permitted to teach the historiography class but that he was not. (Compl. ¶ 127.) These conclusory allegations do not raise a minimal inference of discriminatory motive, and do not support a disparate treatment claim.

Because Kalia has not shown a discriminatory motive for any of the adverse actions, Defendants' motion to dismiss the First Cause of Action is GRANTED.

### E.    *Retaliation*

Defendants also argue that Kalia fails to state a claim for retaliation under Title VII; Kalia's Fourth Cause of Action, (Compl. ¶¶ 165–70). Title VII contains a separate antiretaliation provision that forbids an employer from discriminating against a person "because he has opposed" workplace discrimination or another practice made unlawful by Title VII, or "because he has made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 41 U.S.C. § 2000e–3(a). To survive a motion to dismiss, the plaintiff's allegations must show "(1) participation in a protected activity; (2) that the defendant [or its agent] knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). The allegations must also establish the defendant's liability. *Menaker v. Hofstra Univ.*, 935 F.3d 20, 37–38 (2d Cir. 2019). When the defendant is an employer, the plaintiff must show that the retaliatory conduct of the employer's agent "is imputable to the employer under general agency principles," or

imputable by a "cat's paw" theory that "the agent intended and was the proximate cause of the adverse result." *Id.*

The surviving portion of Kalia's retaliation claim relates to the denial of his Distinguished Professor application in December 2020. Kalia asserts that "Defendants orchestrated the final denial" of his Distinguished Professor application "directly after his continued complaints of discrimination." (Compl. ¶ 168.) The essence of this claim is Kalia's belief that Occhiogrosso—Counsel to the CCNY President—has continuously and "systematically schem[ed] to undermine" Kalia's advancement at the school since Occhiogrosso represented CCNY in a 1998 arbitration of Kalia's racial discrimination complaint. (Compl. ¶ 122; *see also* Doc. 1-9 at 8–9.) According to the Complaint, in 2015—while Kalia's prior Distinguished Professor application was pending—Occhiogrosso told a CCNY administrator that Kalia should not be considered for a Distinguished Professor appointment because Kalia had previously filed discrimination lawsuits against the school. (*See* Compl. ¶ 81; Opp'n at 18–19.) Kalia further asserts that during the pendency of his most recent Distinguished Professor candidacy, Occhiogrosso convinced Koch and Kornhauser to "influence" the P&B Committee to deny his application. (Opp'n at 19.) Specifically, Plaintiff alleges—based on his contention that in 2015 Occhiogrosso "advised" two professors "not to secure external reference letters" for Kalia's prior candidacy, (Compl. ¶ 80)—that Occhiogrosso caused Kornhauser not to request external references to support Kalia's most recent candidacy, (*id.* ¶ 102; Doc. 1-8 at 3; Opp'n at 20), and that Koch "consult[ed]" with Occhiogrosso "on the matter of reference letters," (Compl. ¶ 122). In short, Kalia seems to suggest that the P&B Committee denied his Distinguished Professor application because it lacked external references, and that Occhiogrosso, through

Kornhauser and Koch, blocked the P&B Committee from receiving the references they needed to approve his application.

Kalia's retaliation claim fails because he does not establish a causal connection between any of his protected activity and the denial of his Distinguished Professor appointment. Plaintiff argues that Occhiogrosso's 2015 statement[6] that the school should not appoint Kalia as a Distinguished Professor because of his prior litigation is direct evidence of causation. (Opp'n at 18–22.) "[E]vidence of retaliatory animus directed against the plaintiff by the defendant" often establishes the causation element of a retaliation claim. *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (citation omitted). Because Plaintiff does not allege that Occhiogrosso himself denied his Distinguished Professor bid or that he was a member of the P&B Committee, however, Plaintiff must also plausibly allege that Occhiogrosso's retaliatory intent "was the proximate cause" for the P&B Committee to reject his Distinguished Professor application in December 2020. *Menaker*, 935 F.3d at 37–38.

The closest Kalia comes to making a showing of causation is alleging in his opposition brief that "Occhiogrosso . . . improperly influenced Kornhauser by direct[ing] her" not to accept certain external references. (Opp'n at 20.) The Complaint does not contain this allegation; rather, it merely alleges that "Kornhauser had taken the position that some of [Kalia's] potential referees had not responded or refused to provide recommendations," (Compl. ¶ 102), and an email attached to the Complaint alleges that Kornhauser was acting "with improper reliance on Mr. Occhiogrosso" in handling Kalia's candidacy, (Doc. 1-8 at 2). The Complaint does not

---

[6] In dismissing a retaliation claim in Kalia's prior complaint, Judge Furman concluded that "[a]lthough Kalia alleges that Occhiogrosso and Weitz campaigned against his distinguished professorship bid because he filed a discrimination lawsuit and charge against CUNY in 1998 and 2002, Kalia does not plausibly make [a causal] connection between those activities and the denial of his salary supplement," which Kalia had pled as a separate adverse action. *Kalia*, 2020 WL 6875173, at *6 (internal citations omitted).

specifically allege that Occhiogrosso told Kornhauser not to accept his recommendation letters, and "allegations in a brief are not sufficient to salvage deficient pleadings." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 519 n.10 (S.D.N.Y. 2013) (citation omitted). Thus, Kalia does not plausibly allege that Occhiogrosso, through Kornhauser, caused the P&B Committee to deny his promotion. Additionally, there is no allegation in the Complaint that Occhiogrosso influenced Koch at all.

Further, even if Kalia had plausibly alleged that Kornhauser and Koch were influenced by Occhiogrosso or had retaliatory intent of their own, he has not shown that any person's intent "was the proximate cause" of the P&B Committee's decision to deny his Distinguished Professor application. *Menaker*, 935 F.3d at 37–38. The Complaint does not allege the identities of any member of the P&B Committee, and it links only Koch to the P&B Committee's decision, alleging that the Committee acted "under [his] improper influence." (Compl. ¶ 119.) This vague assertion does not explain how or why Koch purportedly influenced the P&B Committee, and conclusory allegations of causation are insufficient to defeat a motion to dismiss. *Cf. Twombly*, 550 U.S. at 555 (explaining that factual allegations must "raise a right to relief above the speculative level"). Defendants' motion to dismiss the portion of the retaliation claim premised on the Distinguished Professor position is GRANTED.

### F.    *State-Law Claims*

Having dismissed Kalia's federal claims, only the state-law claims remain. When, as here, a district court's subject-matter jurisdiction is based on the plaintiff's federal claims, *see* 28 U.S.C. § 1331, the district court "may decline to exercise supplemental jurisdiction" over pendent state-law claims when it has "dismissed" the federal "claims over which it has original jurisdiction," *id.* § 1367(c)(3). Generally, "where the federal claims are dismissed before trial,

the state claims should be dismissed as well" in the interest of "judicial economy, convenience, fairness, and comity." *Kalia*, 2020 WL 6875173, at *7 (first quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998); and then quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  I see no reason to depart from the general rule here—Kalia has not presented any— and therefore DISMISS Kalia's state-law claims.

### V.    Conclusion

For the foregoing reasons, it is hereby:

ORDERED that Defendants' motion to dismiss is GRANTED.  Plaintiff's Title VII claims—his First, Second, and Fourth Causes of Action—are DISMISSED WITH PREJUDICE. The remainder of Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.

The Clerk of Court is respectfully directed to terminate the pending motion at Doc. 23 and to close the case.

SO ORDERED.

Dated: February 18, 2025
  New York, New York

              Vernon S. Broderick
              United States District Judge